IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE EAGLE ALLIANCE
2711 TECHNOLOGY DRIVE
ANNAPOLIS JUNCTION, MD 20701

    and

COMPUTER SCIENCES CORP.
3170 FAIRVIEW PARK DRIVE
FALLS CHURCH, VA 22041

    and

CSC GOVERNMENT SOLUTIONS LLC
3170 FAIRVIEW PARK DRIVE
FALLS CHURCH, VA 22041

        Petitioners,

    v.

AT&T CORP.,
ONE AT&T WAY
BEDMINSTER, NJ 07921.

        Respondent.

Misc. Case No. _____

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL**

Petitioners The Eagle Alliance ("Eagle Alliance"), Computer Sciences Corporation ("CSC"), and CSC Government Solutions LLC (collectively, the "Company") through their undersigned attorneys, submit this Memorandum in Support of their Motion to Compel.

## I.   <u>INTRODUCTION AND PROCEDURAL HISTORY</u>

Despite Petitioners' best efforts to meet and confer with counsel for Respondent AT&T Corp. ("AT&T"), AT&T refuses to comply with two document subpoenas Petitioners served on AT&T. The first document subpoena was issued on January 12, 2016, while the underlying litigation between the Petitioners and AT&T's former employee, Anthony Quattrone, was in its

initial, limited stage of expedited discovery.  The second document subpoena was issued on February 25, 2016, after full discovery began in the underlying litigation.

As described herein, with regard to the first document subpoena served, AT&T has continually delayed its compliance with this subpoena and has refused to produce nearly 150 documents on the basis of the "attorney-client privilege," despite that many of these documents plainly are not privileged attorney-client communications.  Further, AT&T continues to refuse to provide Petitioners with sufficient information in its privilege log to enable Petitioners to assess whether communications listed are indeed protected by the attorney-client privilege.

With regard to the second document subpoena, AT&T has refused to produce any documents to Petitioners in response to this subpoena.  However, as described below, because AT&T failed to timely object to the second document subpoena, its objections to the subpoena (which provide its basis for refusing to produce any documents whatsoever in response to this subpoena) should be deemed waived and compliance with the second document subpoena mandated by the Court.  Beyond AT&T's failure to timely object, the second document subpoena requests relevant materials in the sole possession of AT&T that are necessary to uncover the facts related to Anthony Quattrone's actions while at AT&T.  Thus, AT&T will be unable to show that unusual circumstances exist here such that its failure to timely object should not constitute a waiver of its objections.[1]

Based on AT&T's failure to comply with the Petitioners' subpoenas, Petitioners have no choice but to request judicial intervention to mandate AT&T's compliance therewith.

---

[1] Even if AT&T's objections were timely, which CSC does not concede, AT&T's objections are without merit and the Court should compel production of the requested records.

### A.      The Underlying Litigation Against Anthony Quattrone.

A brief overview of the underlying litigation is necessary to understand the importance of the documents sought and the urgency for compelling AT&T to provide them.  As described in more detail below, (1) Anthony Quattrone previously served in a high-ranking position at the Company and led its efforts to obtain a multi-billion dollar U.S. government contract, (2) he misappropriated the Company's confidential information related to that procurement, (3) AT&T hired him to work on the *same* procurement in competition with the Company, and (4) Mr. Quattrone accessed the misappropriated materials while working on AT&T's proposal. Accordingly, the documents sought from AT&T are essential to determining the scope of Mr. Quattrone's misappropriation.  In light of the fact that proposals for this multi-billion dollar government contract are due to be submitted in mid-April, it is imperative that the Company learns immediately the extent to which its trade secrets misappropriated by Mr. Quattrone may have been shared with others at AT&T.

Mr. Quattrone previously worked on the Company's efforts to procure a National Security Agency ("NSA") contract known as Greenway.[2]  Greenway is a multi-year, multi-billion dollar information technology procurement that builds on a previous NSA contract that the Company currently services.[3]  Responses to the Greenway Request for Proposals ("RFP") are due next month.

For approximately four years, or virtually his entire time with the Company, Mr. Quattrone served as its Capture Manager for Greenway.[4]  In that role, he was the highest-ranking employee on the project on a day-to-day basis.  His responsibilities included assembling and

---

[2] *See, e.g.,* First Amended Complaint for Injunctive Relief and Damages, *The Eagle Alliance, et al., v. Quattrone,* 1:15-CV-02695-JKB (D. Md., December 11, 2015) ("Amended Complaint") at ¶ 2.
[3] *Id.* at ¶¶ 2, 16-20.
[4] *Id.* at ¶¶ 2, 28-29.

managing a team of experts and developing and executing the strategy related to the Company's efforts to submit a proposal in response to the multi-billion dollar Greenway RFP.[5]

In late April or early May 2015, Mr. Quattrone started interviewing with AT&T for a position with AT&T working on its Greenway proposal.[6]  After interviewing with AT&T and two days prior to his separation from the Company, Mr. Quattrone misappropriated the Company's confidential and proprietary information and trade secrets by emailing himself four documents related to the Company's Greenway proposal.[7]  Mr. Quattrone also misappropriated another document that included the Company's strategy related to all intelligence procurement opportunities in Maryland, Northern Virginia, and the District of Columbia by emailing it to himself.[8]  While working at AT&T on the Greenway proposal in competition with the Company, Mr. Quattrone accessed these documents on his AT&T computer.[9]  And this occurred after both Mr. Quattrone and AT&T were notified of his continuing confidentiality obligations to the Company.[10]

Based on the foregoing, Petitioners initiated litigation against Mr. Quattrone in the United States District Court for the District of Maryland, *The Eagle Alliance, et al., v. Quattrone* (the "Litigation").[11]  The Eagle Alliance and CSC initiated the Litigation against Mr. Quattrone in September 2015 alleging, among other claims, that Mr. Quattrone misappropriated the

---

[5] *Id.*

[6] *See id.* at ¶ 36; *see also* Defendant's Answer to the First Amended Complaint, *The Eagle Alliance, et al., v. Quattrone,* 1:15-CV-02695-JKB (D. Md., Jan. 14, 2015) at ¶ 36.

[7] Amended Complaint at ¶¶ 4, 46-62.

[8] *Id.* at ¶¶ 70-73.

[9] *See id.* at ¶¶ 8, 51, 55, 57, 61, 72.

[10] Id. at ¶¶ 40-41.

[11] *See The Eagle Alliance, et al., v. Quattrone,* 1:15-CV-02695-JKB (D. Md. 2015).  On December 11, 2015, Eagle Alliance and CSC filed their First Amended Complaint, adding CSC Government Solutions LLC as a Plaintiff.  The three are referred to herein collectively as the "Company."

Company's trade secrets.  In order to determine the extent of the misappropriation, Petitioners sought limited third-party discovery from AT&T for documents that it could not obtain from Mr. Quattrone.

**B.      The Company's First Document Subpoena to AT&T.**

On January 12, 2016, Petitioners served on AT&T a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action attached hereto as Exhibit A ("First Document Subpoena").  The First Document Subpoena required AT&T to produce documents related to Mr. Quattrone's employment with AT&T and its investigation into the allegations against Mr. Quattrone in the Litigation within ten days, on January 22, 2016.  On January 21, 2016, Respondent AT&T served its Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action ("First Subpoena Objections") (attached hereto as Exhibit B).

On February 19, 2016, AT&T produced documents to Petitioners in response to the First Document Subpoena, but failed to produce a privilege log describing the documents withheld on the basis of privilege, as required by Rule 45(e)(2)(A) of the Federal Rules of Civil Procedure.[12] Thus, on February 23, 2016, counsel for Petitioners sent by email the correspondence attached hereto as Exhibit D, demanding the required privilege log no later than February 25, 2016.  On February 25, 2016, counsel for AT&T transmitted a privilege log tracking the numerous documents withheld on the basis of privilege ("First Privilege Log").[13]

Upon Petitioners' review of the First Privilege Log, Petitioners immediately requested a "meet and confer" conference with counsel for AT&T to discuss the deficiencies in the First Privilege Log.  On February 26, 2016, counsel for Petitioners and AT&T held such a conference,

---

[12] The Cover Letter and Supplemental Response to Subpoena are attached hereto as Exhibit C.
[13]  The First Privilege Log is attached hereto as Exhibit E.

after which counsel for Petitioners sent the attached correspondence summarizing Petitioners' concerns with AT&T's First Privilege Log.[14]  During both the "meet and confer" conference held on February 26, and in its follow-up correspondence, counsel for Petitioners identified five general categories of deficiencies in AT&T's privilege claims and the associated  log:

- AT&T withheld communications between only non-lawyers on the basis of the attorney-client privilege;

- AT&T failed to provide information to identity many of the individuals named in log, their role at AT&T, and the basis on which each of these individuals was included in the allegedly attorney-client privileged communications;

- AT&T's descriptions are insufficient to enable the Petitioners to assess whether the attorney-client privilege has been properly asserted;

- AT&T withheld factual documents (as opposed to legal advice) that were collected as part of AT&T's investigation;

- AT&T withheld documents that were purportedly prepared at the direction of counsel, but the descriptions do not contain sufficient information to support its claim such as identifying by whom the documents were created, to whom the documents were communicated, or any other information.[15]

In response, counsel for AT&T indicated AT&T would re-review a number of entries in the First Privilege Log, and within five business days determine whether providing additional information to Petitioners would be appropriate, or whether additional documents should be produced.  Additionally, counsel for AT&T proposed "a possible compromise" by which attorneys for Petitioners and Mr. Quattrone would be able to review certain documents referenced in the privilege log related to AT&T's internal investigation regarding the allegations against Mr. Quattrone in the Litigation, subject to multiple conditions.[16]

---

[14] Exhibit F.

[15] *See* Exhibit F at 1-3.

[16]  Counsel for AT&T, Petitioners and Mr. Quattrone have finally agreed to the terms of such a stipulation, and it was filed with this Court on March 14, 2016.  However, because AT&T's limited proposal – even assuming a Court order is entered as AT&T has required as a precondition of its proposal – in no way resolves the vast majority of the deficiencies with

In response to AT&T's proposed "possible compromise," on March 7, counsel for Petitioners sent by email the correspondence attached hereto as Exhibit G. As stated in this letter, despite that Petitioners disagreed that the Court Order requested by AT&T was necessary, nor that it was their obligation to obtain Mr. Quattrone's consent to such an Order, Petitioners transmitted for AT&T's review a draft Order. On March 8, counsel for AT&T transmitted by email to counsel for Petitioners correspondence containing proposed revisions to the draft Order.[17]

Also on March 8, counsel for AT&T transmitted by hand delivery to counsel for Petitioners AT&T's supplemental responses to the First Document Subpoena and a revised privilege log ("Revised Privilege Log").[18] According to the Revised Privilege Log, AT&T continues to withhold from production nearly 150 documents on the basis of the "attorney-client privilege."

**C.     The Company's Second Document Subpoena to AT&T.**

On February 25, 2016, Petitioners served on AT&T the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action attached hereto as Exhibit K ("Second Document Subpoena").[19] The Second Document Subpoena required AT&T to produce various documents related to: (i) Mr. Quattrone's work in support of AT&T's efforts on its Greenway proposal; (ii) any agreements between Mr. Quattrone and AT&T regarding on-

---

AT&T's compliance with the First Document Subpoena, or the impropriety of its privilege log entries, Petitioners' Motion to Compel remains necessary to address these other substantial open issues with AT&T's production.

[17] *See* Exhibit H.

[18] *See* Exhibit I. The Revised Privilege Log is included at pages 3-6 of Exhibit I. Because AT&T failed to include on the Revised Privilege Log any numbering system for the entries, Petitioners have taken the liberty of attaching hereto as Exhibit J a copy of the Revised Privilege Log including handwritten numbers for each entry, which will be cited to herein as "Revised Privilege Log at [page], lines [line numbers]."

[19] *See also* Exhibit L, the Affidavit of Service confirming the Second Document Subpoena was served on AT&T, via its registered agent in Virginia, on February 25, 2016.

going obligations to the Company following his termination from CSC; (iii) Mr. Quattrone's employment with AT&T, including defense or indemnification agreements related to the Litigation; (iv) work performed by other former Company employees, who were colleagues of and worked closely with Mr. Quattrone both for the Company and for AT&T, in support of AT&T's efforts on its Greenway proposal; (v) and the inspection of electronic devices in AT&T's possession used by Mr. Quattrone during his employment with AT&T.[20]   The documents and devices requested in the Second Document Subpoena are critical for the Company to uncover what actions Mr. Quattrone took with the Company documents he accessed using AT&T's systems.

On March 15, AT&T served its Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action ("Second Subpoena Objections") (attached as Exhibit M).[21]   AT&T did not produce any documents in response to the Second Document Subpoena.   On March 21, Petitioners requested a "meet and confer" conference to discuss its objections and failure to produce any documents in response to the Second Document Subpoena.   On March 22, counsel for Petitioners and AT&T held such a conference, during which counsel for AT&T confirmed it did not intend to produce any documents in response to the Second Document Subpoena.

---

[20] *See* Exhibit K.

[21] Notably, in its Second Subpoena Objections, AT&T concedes that the Second Documents Subpoena was served on AT&T but does not include the date on which service took place. Exhibit L confirms that the Second Document Subpoena was served on February 25, 2016. Further, during the "meet and confer" conference call regarding the First Document Subpoena described above, counsel for AT&T indicated they had learned of the existence a "second subpoena" and inquired as to why counsel for the Petitioners had not provided them with a courtesy copy of this subpoena.  With apologies for this oversight, counsel for the Petitioners transmitted a courtesy copy of the Second Document Subpoena by email to AT&T's counsel on February 26, 2016.  *See* Exhibit N.

## II.     ARGUMENT

Despite Petitioners' best efforts to meet and confer with counsel for AT&T regarding the numerous deficiencies with AT&T's privilege claims and its associated log related to the First Document Subpoena, and AT&T's refusal to produce any documents in response to the Second Document Subpoena, AT&T's continued failure to comply with these subpoenas requires judicial intervention.

Because the legal analysis and arguments related to the First and Second Document Subpoenas are discrete, Petitioners will address fully the legal standards and its arguments related to the First Document Subpoena before proceeding to the legal standards and its arguments related to the Second Document Subpoena.

### A.     AT&T Must Comply with the First Document Subpoena.

As described below, many of the documents AT&T continues to refuse to produce in response to the First Document Subpoena plainly are not protected by the attorney-client privilege because the correspondence is neither to nor from an attorney.  Further, even with regard to communications that include an attorney, AT&T continues to refuse to provide sufficient information from which Petitioners can assess the applicability of the attorney-client privilege.

### 1.     Legal Standards.

As this Court has made clear, "[b]ecause it inhibits the truth-finding process, the attorney-client privilege has generally been narrowly construed."  *In re Veiga*, 746 F. Supp. 2d 27, 34 (D.D.C. 2012).  In order to successfully show that the attorney-client privilege applies to a specific communication, the person claiming privilege must satisfy *all* of the following criteria:

(1) The holder of the privilege is, or sought to be, a client;

(2) The person to whom the communication is made is a member of the bar or his subordinate and, in connection with the communication at issue, is acting in his or her capacity as a lawyer;

(3) The communication relates to a fact of which the attorney was informed by his client, outside the presence of strangers, for the purposes of securing legal advice; and

(4) The privilege has been claimed by the client.

*Id.* at 34 (*citing Elkins v. District of Columbia*, 250 F.R.D. 20, 24 (D.D.C. 2008)); s*ee also Clark v. Unum Life Ins. Co. of America*, 799 F. Supp. 2d 527, 536, n.1 (D. Md. 2011).

To enable other parties and the court to evaluate the privilege claim, pursuant to the Federal Rules of Civil Procedure, a person withholding information or documents which have been sought through a third-party subpoena on the basis of privilege must:

> (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

FED. R. CIV. P. 45(e)(2)(A).  Notably, this is the same requirement for parties to litigation who withhold information or documents based on privilege.  *See* FED. R. CIV. P. 26(b)(5); *see also Ambling Mgmt. Co. v. Univ. View P'ners LLC*, 2010 WL 2465021 at *2 (D. Md., June 11, 2010).

As noted above, the privilege log must contain specific information from which the parties and the Court can assess the privilege claim.  This Court has provided guidance regarding the appropriate level of detail to be provided as part of a privilege log:

> the opposing party should be able, from the entry in a privilege log itself, to assess whether the claim of privilege is valid.  An entry that would meet this requirement might be: Letter from Client X to Lawyer Y seeking advice about whether certain transaction was taxable.  From the entry itself the opposing party and ultimately the judge should be able to tell that the information not being disclosed is properly claimed as privileged, since it was a communication from a client, intended to be confidential, that sought legal advice.

*Chevron Corp. v. Weinberg Group*, 286 F.R.D. 95, 98 (D.D.C. 2012) (internal citations omitted).

In the same decision, this Court specifically observed, by way of example, that a description in a privilege log such as "Letter from client to lawyer – attorney client privilege" would be "insufficient since there is no indication in the log of why the document was intended to be confidential." *Id.* Further, the Court warned against "the incorrect notion that all communications between lawyer and client are privileged[.]" *Id.*

While the Local Rules of this Court do not contain specific requirements for a privilege log, the United States District Court for the District of Maryland (in which the underlying litigation against Mr. Quattrone is pending, and to which the Petitioners have simultaneously requested this discovery dispute be transferred) does provide guidance regarding privilege log requirements:

> whe[n] a claim of privilege is asserted objecting to any interrogatory, document request, or part thereof, and information is not provided on the basis of such assertion:
>
> i. The party asserting the privilege shall, in the objection ... identify with specificity the nature of the privilege (including work product) that is being claimed;
>
> ii. The following information should be provided in the objection, if known or reasonably available, unless divulging such information would cause disclosure of the allegedly privileged information;
> . . .
>
> b. For written communications:
>
> (i) the type of document;
>
> (ii) the general subject matter of the document;
>
> (iii) the date of the document; and
>
> (iv) such other information as is sufficient to identify the document, including whe[n] appropriate, the author, addressee,

> custodian, and any other recipient of the document, and whe[n] not
> apparent, the relationship of the author, addressee, custodian, and
> any other recipient to each other.

*See* Guideline 10.d of the Local Rules of the District of Maryland; *see also Ambling Mgmt. Co.,*

2010 WL 2465021 at *2.

In *Ambling Mgmt. Co.*, this Court analyzed the sufficiency of a privilege log and found

numerous insufficiencies, including:

> (1) failure to identify individuals named in the log;
>
> (2) entries presuming the entire listed document was privileged
> when only part, if any, might be;
>
> (3) inadequate descriptions of many withheld documents; and
>
> (4) document descriptions that suggested no privilege applies.

*Id.* at *3.

A party's failure to provide an adequate privilege log can constitute waiver of the claimed

privileges.  *See N.L.R.B. v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 307 (D.D.C. 2009).

Finally, it is important to keep in mind the United States Supreme Court's admonishment

that the attorney-client privilege does not extend to all corporate employees.  The attorney-client

privilege extends to correspondence between corporate counsel and corporate employees *only* to

the extent that the communications were made at the direction of corporate superiors for the

purpose of securing legal advice, and if employees were made aware that they were being

questioned so that the corporation could obtain legal advice. *Upjohn Co. v. U.S.*, 449 U.S. 383,

394 (1981).

### 2.   AT&T Continues to Improperly Withhold Documents in Response to the Subpoena.

Despite Petitioner's "meet and confer" efforts described above, AT&T's document

production in response to the First Document Subpoena, and its related Revised Privilege Log,

remain insufficient for the same reasons Petitioners articulated in the "meet and confer" conference held on February 26 and the correspondence transmitted to AT&T's counsel that same day.  Each deficiency previously described, and the efforts AT&T made (if any) to rectify the deficiency, are addressed in greater detail below.

### a.   AT&T Has Withheld Correspondence Despite No Attorneys Being Parties to the Correspondence.

Despite that Counsel for Petitioners met and conferred with counsel for AT&T regarding its withholding of communications based on the attorney-client privilege between non-lawyers only, AT&T continues to withhold a number of such communications.  In apparent response to the concerns Petitioners raised, AT&T supplemented its original production by producing, in a redacted format, some previously withheld email communications.  A number of entries on the Revised Privilege Log now contain descriptions such as "Portion of email chain redacted requesting legal advice of counsel (R. Vartain) regarding document access."[22]  However, because there are no bates numbers on the Revised Privilege Log that correspond to AT&T's production, Petitioners cannot determine which documents produced refer to which entries on the Revised Privilege Log.[23]   In addition, Petitioners have located at least two entries on the Revised Privilege Log that refer to redacted correspondence, but which do not appear to have been included in AT&T's production.[24]

Importantly, however, according to the Revised Privilege Log, AT&T continues to withhold at least 18 documents between non-lawyers only from production on the basis of the attorney-client privilege.[25]   As described above, among the criteria for properly asserting the

---

[22] *See* Revised Privilege Log at 1, lines 7-8.
[23] *See* Revised Privilege Log, *passim*.
[24] *See, e.g.* Revised Privilege Log at 3, lines 3-4.
[25] *See, e.g.,* Revised Privilege Log at 3, lines 12, 13, 16, 28 and at 4, lines 1-3, 9-13, 16, 17, 24, 25, 27, 30-32.

attorney-client privilege as a basis for withholding otherwise responsive documents in discovery is that "[t]he person to whom the communication is made is a member of the bar or his subordinate and, in connection with the communication at issue, is acting in his or her capacity as a lawyer[.]"  *See In re Veiga*, 746 F. Supp. 2d at 34.  Regarding the communications between only non-lawyers that AT&T continues to withhold, AT&T's Revised Privilege Log description makes clear that the communication is not to or from "a member of the bar" or a "subordinate" of a member of the bar engaged in the communication acting on behalf of the member of the bar "in his or her capacity as a lawyer."  As such, AT&T has not met its burden of establishing the privileged nature of these communications and should be compelled to produce these documents. *See Jackson Hosp. Corp.*, 257 F.R.D. at 307 (stating that an inadequate privilege log can constitute waiver).

AT&T's non-lawyer communications plainly are not protected by the attorney-client privilege.  Accordingly, they have been improperly withheld, and should be produced immediately.

> **b.     AT&T has Failed to Provide Sufficient Information Regarding the Basis on Which Each Individual Identified in the Log Participated in an Allegedly Privileged Communication.**

Another topic of concern raised by Petitioners' counsel at the February 26 meet and confer conference with AT&T counsel was AT&T's failure to provide sufficient information regarding the approximately 40 AT&T employees who are listed as parties to various allegedly attorney-client privileged communications.  AT&T still has not provided Petitioners with information about such individuals' participation in the communications sufficient to determine whether AT&T's privilege claim is appropriate.

As described above, among the prerequisites for withholding a communication based on the attorney-client privilege is that "[t]he communication relates to a fact of which the attorney

was informed by his client, *outside the presence of strangers,* for the purposes of securing legal advice[.]"  *See In re Veiga,* 746 F. Supp. 2d at 34 (emphasis added).   To enable parties and the court to determine whether a communication is made "outside the presence of strangers," among the guidance provided by the Local Rules for the District of Maryland is a requirement that a privilege log include, "whe[n] not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other[.]"  *See* Guideline 10.d of the Local Rules of the District of Maryland.

Moreover, as the Supreme Court made clear in its landmark *Upjohn* decision, the attorney-client privilege extends to correspondence between corporate counsel and corporate employees *only* to the extent that the communications were made at the direction of corporate superiors for the purpose of securing legal advice, and if employees were made aware that they were being questioned so that the corporation could obtain legal advice. *Upjohn Co.*, 449 U.S. at 394.  While following the February 26 meet and confer, AT&T provided Petitioners' counsel a list of job titles for such individuals (and labeled such list "Attorneys' Eyes Only"), without context for why these individuals were parties to the various communications, such job title information alone is insufficient to properly assess whether each such withheld communication was made "outside the presence of strangers" and, thus, properly withheld as an attorney-client privileged communication.  *See United States v. Cohn*, 303 F. Supp. 2d 672, 684-85 (D. Md. 2003) (finding that the attorney-client privilege did not apply where allegedly privileged communications were simultaneously shared with individuals not necessary to obtain legal advice).

Further, the Revised Privilege Log reveals that more than 30 communications withheld by AT&T on the basis of the attorney-client privilege include an attorney as a recipient, but only

"carbon copied" (in the "cc" line).[26]   As described above, this Court has warned against "the incorrect notion that all communications between lawyer and client are privileged[.]"   *See Chevron Corp.*, 286 F.R.D. at 98.  Particularly with regard to those communications that include an attorney merely as "cc'd", AT&T has failed to provide sufficient information for Petitioners to determine, for example, "why the document was intended to be confidential." *Id.*   Because AT&T's privilege log fails to establish the essential elements of its claim of privilege, AT&T should be compelled to produce these documents. *Jackson Hosp. Corp.*, 257 F.R.D. at 307.

AT&T also appears to have taken the position that Mr. Quattrone, the target of its internal investigation, is a "client" of AT&T's corporate counsel for purposes of the application of AT&T's attorney-client privilege.  According to the Revised Privilege Log, AT&T has withheld at least 18 documents containing communications to which Mr. Quattrone himself was a party, claiming such communications are covered by the attorney-client privilege.[27]   Yet, AT&T has provided no information to explain how the target of its own allegedly privileged internal investigation could be covered by AT&T's attorney-client privilege.[28]

Because AT&T has failed to articulate the relationship of the individuals who were parties to the allegedly attorney-client privileged communications, Petitioners are unable to evaluate whether each correspondence was properly withheld.

---

[26] *See* Revised Privilege Log at 1, lines 1, 6, 9, 10, 20, 21, 30; at 2, lines 2, 15, 17, 23, 26, 32-35, 41-43; at 3, lines 1, 2, 5-11, 14; and at 4, line 20.

[27] *See* Revised Privilege Log at 1, lines 1, 4, 17; at 2, lines 41-43; at 3, lines 2, 4-7, 9-11, 15; and at 4, lines 17, 30.

[28] AT&T has not alleged the existence of a common-interest between it and Mr. Quattrone with respect to the misappropriation of trade secrets claims at issue in this case.  And any such argument would be belied by AT&T's own refusal to share the results of its internal investigation with Mr. Quattrone himself.

c.    **AT&T has Failed to Provide Sufficient Descriptions Regarding the Withheld Communications.**

Despite the multiple efforts to meet and confer and time being of the essence, AT&T continues to fail to provide the requisite level of detail with regard to those communications that include an attorney.   As this Court found in *Chevron,* descriptions in a privilege log are "insufficient [if] there is no indication in the log of why the document was intended to be confidential." *Chevron Corp.,* 286 F.R.D. at 98.  The *Chevron* Court provided an example of a sufficient privilege log entry: "Letter from Client X to Lawyer Y seeking advice *about whether certain transaction was taxable*." *Id.* (Emphasis added.)  The descriptions included by AT&T in the Revised Privilege Log, such as "Email chain requesting legal advice of counsel (R. Vartain) *regarding Anthony Quattrone*"[29] or  "Email chain requesting legal advice of counsel (R. Vartain) r*egarding document access*"[30] are simply insufficient for the Petitioners to assess whether the communication was made "for the purposes of securing legal advice[.]"  *See In re Veiga,* 746 F. Supp. 2d at 34.

Because AT&T has failed to provide a legally adequate description for any of the communications included in the Revised Privilege Log, neither the Court nor Petitioners can evaluate whether each correspondence was properly withheld.  The descriptions AT&T provides on its privilege log do not, on their face, raise factual or legal questions that would make these documents appropriate for an *in camera* review.  *Cf. Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 265 (D. Md. 2008) (describing downsides to in camera review).  Allowing AT&T to produce a bare-bones privilege log and then consume valuable judicial resources to conduct an *in camera* review would reward dilatory litigants for providing minimal detail on their privilege logs.

---

[29] *See, e.g.,* Revised Privilege Log at 1, lines 9, 30, 31 (emphasis added).
[30] *See, e.g.,* Revised Privilege Log at 1, lines 6-8, 10, 12, 13, 20, 21, 23-27 (emphasis added).

### d.    AT&T Has Improperly Withheld Factual Documents Discovered During Its Internal Investigation.

Even in light of the clear legal requirements that the attorney-client privilege attaches only to *communications* to or from counsel for the purposes of seeking legal advice (*see In re Veiga*, 746 F. Supp. 2d at 34) and despite Petitioners' attempts to meet and confer with AT&T, AT&T continues to improperly withhold numerous factual documents that were collected as a part of AT&T's internal investigation into Mr. Quattrone's actions.[31]   It is well-established that facts underlying investigations are not privileged.  *See, e.g., Upjohn Co.*, 449 U.S. at 395-96 (stating "privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney").  AT&T has provided no information in the Revised Privilege Log to support its position that these factual documents are protected by the attorney-client privilege and, indeed, Petitioners maintain that no such legal support exists.  AT&T has not asserted work-product protection over a single document, and these underlying factual documents cannot be considered privileged attorney-client communications as a matter of law.  Thus, AT&T must produce all factual documents collected as part of its internal investigation in response to the First Document Subpoena.

### e.    AT&T Has Improperly Withheld Documents Purportedly Created at the Direction of Counsel Without Adequate Descriptions.

AT&T continues to withhold more than 20 documents, citing the attorney-client privilege, that (according to the Revised Privilege Log) were purportedly prepared at the direction of counsel, but were never transmitted to or from an attorney.[32]

As described above, the attorney-client privilege applies only to communications

---

[31] *See, e.g.,* Revised Privilege Log at 3, lines 15, 21, 28; and at 4, lines 9, 30.
[32] *See* Revised Privilege Log at 3, lines 17, 18, 22, 24, 27, 30; at 4, lines 4, 5, 7, 8, 15, 18, 19, 21, 23, 26, 28, 29, 33, 34.

> made [to] a member of the bar or his subordinate and, in
> connection with the communication at issue, is acting in his or her
> capacity as a lawyer . . . that relates to a fact of which the attorney
> was informed by his client, outside the presence of strangers, for
> the purposes of securing legal advice[.]

See *In re Veiga*, 746 F. Supp. 2d at 34.  Thus, documents purportedly prepared at the direction of

counsel but not transmitted to an attorney cannot be protected by the attorney-client privilege.

Further, the descriptions of these documents in AT&T's Revised Privilege Log do not contain

any substantive descriptive information, such as by whom the documents were created, to whom

the documents were communicated, or any other information that would allow Petitioners to

assess the propriety of AT&T's attorney-client privilege assertion in each instance.[33]

Thus,  this category of documents likewise fails to meet the prerequisites for attorney-

client privileged communications and AT&T should be compelled to produce them.

### B.      **AT&T Waived its Objections to the Second Document Subpoena.**

As described above, Petitioners served the Second Document Subpoena on AT&T on

February 25, 2016.  AT&T did not object to the Second Document Subpoena until March 15,

2016, 19 days after the Second Document Subpoena was served.  These objections were not

timely served.  Thus, AT&T has waived its objections and its compliance with the Second

Document Subpoena should be ordered.

Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure allows persons commanded to

produce documents pursuant to a third-party subpoena the opportunity to object to the subpoena.

Rule 45(c)(2)(B) also commands that "[t]he objection must be served before the earlier of the

time specified for compliance or 14 days after the subpoena is served."  If the recipient of a

third-party subpoena fails to timely object to the subpoena, the objections typically are deemed

to be waived.  *See, e.g., Alexander v. FBI*, 186 F.R.D. 21, 34 (D.D.C. 1998).  Only in "unusual

---

[33] *See id.*

circumstances and for good cause [will] the failure to act timely . . . not bar consideration of objections." *Id.* These unusual circumstances are found where:

> (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; . . .
>
> (2) the subpoenaed witness is a nonparty acting in good faith; . . . and
>
> (3) counsel for witness and counsel for subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged legal basis for the subpoena.

*Id.*

AT&T cannot show that "unusual circumstances" and "good cause" exist for its failure to timely object to the Second Document Subpoena.

To start, the Second Document Subpoena is not "overbroad on its face" and does not "exceed the bounds of fair discovery," which AT&T will be required to show to excuse their failure to timely object to the Second Document Subpoena.  As described above, the Second Document Subpoena sought documents from AT&T critical to the Company's analysis of the actions taken by Mr. Quattrone related to the Company documents he misappropriated and accessed using AT&T's systems.   These requests included documents related to: (i) Mr. Quattrone's work in support of AT&T's efforts on its Greenway proposal; (ii) work performed by other former Company employees, who were colleagues of and worked closely with Mr. Quattrone both for the Company and for AT&T, in support of AT&T's efforts on its Greenway proposal; (iii) any agreements between Mr. Quattrone and AT&T regarding on-going obligations to the Company following his termination from CSC; (iv) Mr. Quattrone's employment with AT&T, including defense or indemnification agreements related to the Litigation; and (v) and the

inspection of electronic devices in AT&T's possession used by Mr. Quattrone during his employment with AT&T.[34]

The first two categories of documents described above are critical for the Company to uncover what actions Mr. Quattrone took with the Company documents he accessed using AT&T's systems.  Further, the Company must be able to review correspondence and documents authored by and sent to Mr. Quattrone during his relatively short employment with AT&T related to his support of its Greenway efforts to determine whether Mr. Quattrone transmitted or revealed the contents of the Company's trade secret documents which he accessed from AT&T's systems.  The Company is entitled to review correspondence Mr. Quattrone had with AT&T regarding his obligations to the Company and AT&T's involvement in supporting him through the Litigation.  Finally, particularly in light of AT&T's position described above regarding the privileged nature of its internal forensic investigation into Mr. Quattrone's misappropriation of the Company's trade secrets, the Company should be entitled to conduct an independent analysis of the devices utilized by Mr. Quattrone during his employment with AT&T.

Further, AT&T will be unable to show good faith to excuse its failure to timely object.  As described above, its counsel received a courtesy copy of the Second Document Subpoena as early as February 26, the day after it was served.  Previously, AT&T had timely filed its objections to the First Document Subpoena.  And at no time prior to AT&T's service of its Second Subpoena Objections were counsel for AT&T and Petitioners in contact regarding AT&T's compliance with the Second Document Subpoena.

---

[34] *See* Exhibit K.  Notably, Mr. Quattrone worked on AT&T's Greenway efforts from, at most, June 2015 to September 2015.  This limits the potential burden on AT&T to produce documents in response to the Second Document Subpoena.

Finally, even if AT&T's Second Subpoena Objections, which center on the claim that the requests are beyond the scope permissible under the rules, were timely (which they were not), compliance still must be ordered here.  For the reasons stated above, the documents and devices requested by the Second Document are directly relevant to the matters on hand in this litigation and are necessary to enable the Company to uncover what actions Mr. Quattrone took with the Company documents he accessed using AT&T's systems.

## III.    <u>CONCLUSION.</u>

For the reasons stated herein, AT&T has failed to comply with Petitioners' subpoenas.  In Response to the First Document Subpoena, AT&T is improperly withholding approximately 150 documents from production to Petitioners.  To the extent that some of these documents may properly have been withheld based on the attorney-client privilege, AT&T has failed to provide adequate information for the Petitioners to assess whether the privilege has been appropriately claimed.  Further, AT&T has failed to produce any documents in response to the Second Document Subpoena, and because it waived its objections to the Second Document Subpoena, AT&T must be ordered to comply fully with the Second Document Subpoena.

Petitioners thus respectfully request that AT&T be required to produce the improperly withheld documents immediately, in light of the impending April 2016 Greenway proposal submission deadline.

Dated:  March 29, 2016

Respectfully submitted,

VEDDER PRICE P.C.

By: /s/ Amy L. Bess

      Amy L. Bess, DC Bar. No. 418985
      Sadina Montani, DC Bar No. 988999
      Vedder Price P.C.
      1401 I Street NW
      Suite 1100
      Washington, D.C.  20005
      T:  +1 (202) 312-3320
      F:  +1 (202) 312-3322
      abess@vedderprice.com
      smontani@vedderprice.com

*Counsel for Petitioners*
*The Eagle Alliance, Computer Sciences Corp.,*
*and CSC Government Solutions LLC*